Case 15-1782, James Sylvester Jr v. USA. Argument not to exceed 15 minutes per side. Mr. Shuker, you may proceed for the appellant. Good morning, Your Honors. May it please the Court, I am Daniel Shuker, the Court-Appointed Counsel for the appellant, James Roy Sylvester Jr. And I have requested three minutes for rebuttal. This case is about a man whose Speedy Trial Act rights were violated and whose trial and appellate counsel repeatedly failed to protect those rights. During the two and a half years before Sylvester's trial, the act was violated twice.  Everyone but the government now concedes the act was violated. Sylvester's trial and appellate counsel had many opportunities to correct those violations before trial or on appeal before this Court, but they missed all of them. Before trial, his counsel failed to identify a Speedy Trial Act violation either before or after two key witnesses died. Separately, on direct appeal before this Court, his counsel again failed to identify the violations despite extensive prompting from the panel of this Court. Had his counsel raised those violations? Was there agreement that there was not only a violation of the Speedy Trial Act but also ineffective assistance of counsel so that, that is, in failing to raise the question, so that the only question is one of prejudice under the Strickland case and ineffective assistance of counsel? Is that really basically the question before us? As in whether prejudice is more disputed? I think so. The district court below in its 2255 ruling found that there was deficient performance of counsel and that the Speedy Trial Act had indeed been violated twice and that Sylvester's trial counsel and his appellate counsel were defective for failing to address those violations at their respective times. The district court departed from Sylvester's argument before this Court now in saying that the Court said that there was not prejudice in that case. Our argument here, of course, is that there indeed was prejudice here. There are different ways that this Court can think about that. I think we can essentially walk chronologically through the different times when Sylvester's trial and appellate counsel could have raised these claims but failed to do so. So essentially— Oh, yes. So there are—really you can look at three key time periods. The first two are before trial and the third is on appeal. And the first time period is essentially the time from when these violations occurred. They both occurred in July of 2003. And when the two key witnesses passed away, which was in July of 2004 for Sylvester's grandfather and September of 2004 for Mr. Wooden. The second period, of course, is after the time these witnesses died and when Sylvester did indeed go to trial in September of 2005. The third, of course, is the appeal before this Court. I sense the record establishes there was a violation of the Speedy Trial Act. Yes, and— I mean, that's sort of factually maybe okay. The question, as Judge Merritt says, focuses on was it prejudicial. Yes. If, in fact, the district court would have dismissed— I mean, if it had been properly raised and it would have dismissed the indictment for without prejudice, the government would have just re-indicted your man and then the facts may have convicted him. It wouldn't be any prejudice. So what do you say to that? So I would say, first, the government still contests 14 years later. It refuses to confess that there was any error or any Speedy Trial Act violation in this case, according to its brief before this Court. However, the way I would say to look at prejudice here, so in that first time period before the witnesses died, if there had been a motion under 3162A2 by Sylvester's trial counsel to dismiss the indictments, as the district court said, finally realized in 2015, the indictment would have been dismissed. Now, had that happened earlier on, there would have been a greater chance that these two witnesses could have been able to testify at trial. As the Supreme Court said in Taylor, dismissal without prejudice is not a toothless sanction. The government has to go through the effort to re-indict. In addition to that, you also say that thereafter the mother was indicted, so that that would be an element of prejudice. No one wants his mother indicted. The mother had not been indicted during the period that was open in the Speedy Trial Act. And what about anything thereafter? Like the sentence in this case was 35 years, as I understand it. Yes. It's a long sentence. It is, yes. And so what do you say about that? There were enhancements that would not have been added up to 35 years if the Speedy Trial Act had been complied with and if counsel had been diligent in that respect? Yes. What were those other problems that arose, enhancements, et cetera? Yes, so I think there's separately, there's the different kinds of prejudice that were suffered and also the specific sentencing issue here. There were a number of enhancements that were applied during the sentencing phase. There was a leadership enhancement given the number of people who were eventually in this final version of the indictment. So you're saying that it's doubtful that that would have occurred, that enhancement. Any other enhancement? There was also an obstruction enhancement. The court basically found, since Mr. Sylvester did testify on his own behalf in this case and the jury, of course, found against him, that there was an obstruction enhancement that was to be added there too. Now, the count three is worth noting because count three, which is possession of a firearm in furtherance of a drug trafficking crime, requires a mandatory five-year consecutive sentence. So the rest of these counts ran concurrently. There was a 30-year sort of, that was the highest amount of any of these, both counts one and two, and then there were others for lesser amounts. Is there some indication that the firearm count would not have been included if the Speedy Trial Act had been observed? Yes. I think there are many indications of that. First of all, count three was in one of the violative indictments in this case, the second superseding indictment for which there was. Your position is that that's prejudice because it came about as a result of a superseding indictment which included it after the act ran, so that would not have been included, you're saying? That charge, count three, there was a violation for that specific charge. There are other ones like the prescription pill counts which came afterward, and then we really have to go further into the hypothetical analysis that Strickland asked courts to do about prejudice, about what would have happened had these witnesses been able to testify. But if it had been dismissed without prejudice under a timely objection under the Speedy, then the government could have included these other counts, the leadership enhancement, the firearm, in the re-indictment, right? Well, so I think that gets to a point, as I mentioned, in the trial phase separately from the appellate phase, there's many different times when counsel could have reasonably, as a matter of Strickland performance, could have reasonably moved for dismissal under the Speedy Trial Act. We can now see in retrospect, the later there had been a motion to dismiss under 3162A2 to dismiss the indictment in this case, the more prejudice would have accumulated to Sylvester and the more likely it would have been that the district court would have dismissed with prejudice. We can look at the three statutory factors here. Now, no one can test the seriousness of the charges, as this court said in Moss and other cases, drug charges categorically serious. Now, the other two factors, however, Factor 2 under 3162A2, Factor 2 asks us to look at the facts and circumstances that led to the dismissal. One of the things that courts can often do consider here is whether there is, as the Supreme Court said in Taylor, a pattern of neglect or a truly neglectful attitude, or as this court said in Myers, excuse me, a pattern of negligence on the part of the government. Now, had the district court discovered, say, two years into this prosecution The reason for not catching this is apparently the judge in the case, as well as the prosecutor in the case, as well as the lawyer for the defendant, must have thought to begin with that the speedy trial act starts running again any time there is a superseding indictment, which everybody now agrees is not the case. Apparently, that's what happened, right? Yeah, and the government, that's correct. The government, I believe, based on its briefing, does not concede that point, but everyone else does. Now, I think as this court found in Moss, if the court makes an error with the speedy trial act and the government fails to alert the court to that error, that can count against the government in terms of finding a dismissal without prejudice. At this point, is it your position that the law in this circuit is clear on when the clock runs and how to calculate that with these intervening superseding indictments? I would say so, yes. I think it's clear in essentially every circuit in this country. I think one of the earliest opinions I was able to find was United States v. Gallo. Judge Merritt, you were on the panel in that case. That case was from 1985, and this court noted that under this 70-day provision in the speedy trial act, the government is not entitled to a reset when a superseding indictment is filed. And in this case, when new charges were filed in the second, third, fifth, and eighth superseding indictments, the court gave a reset, and the government asked for that. Look at the record at page 510 to 511 at the motion to dismiss stage, page 24 of the Sixth Circuit brief. The government held on to this. And even in the 2255 motion, the response the government gave below, the government still said that the clock should have been reset here. Now, we have not fully gotten to the third factor under dismissal with prejudice, the third factor being the impact on the administration of justice and the administration of speedy trial act. That Gallo case you're talking about back in the 1980s, make it clear that there was no reset like that, that you had to start counting and you couldn't, every time there was a superseding indictment, you couldn't reset the speedy trial act. We made that clear, did we? Yes, the court said the acts language, the acts language limits a recalculation of the 70-day period only, only to those situations where a party other than the government procures a dismissal, so the government cannot avoid the 70-day requirement. This court has restated that in other cases, Myers much more recently, and, of course, if you look at any other circuit. What relief do you want here now? So I think the relief that is warranted here is a dismissal of the indictment. Now, this court can choose itself whether to order a dismissal that is with or without prejudice, or it can remand to the district court to make that determination. This, obviously, the. And we would have to look to whether or not there was, we would have to look to the degree of prejudice. Yes. And the lower court has found that the particular absence of the witnesses that you rely on did not result in substantial prejudice, or prejudice, significant prejudice to Mr. Sylvester, correct? So the lower court, I think it's a little bit confusing. The lower court looked at this under the speedy trial clause argument, which is not at issue here. So it's not really the same kind of analysis. I think beyond that, though, you know, it's, and this court also looked at Sylvester's grandfather, but not Mr. Wooden. That wasn't brought up. But the fact is his trial counsel and his appellate counsel did not really articulate these arguments with any clarity, did not identify a violation of the speedy trial act. So there was not really a way that, my time is expiring. I can finish. There was not really a way for Sylvester's counsel, since they had not made the predicate for a violation, to show there had been prejudice from the loss of these, the deaths of these witnesses. And as explained in the briefs for count three and for the counts that involve possession with intent to distribute, there really could have been a very serious impact on the jury's verdict. Other questions? No. Thank you. Thank you, sir. You'll have your rebuttal. May it please the court. Andrew Goetz for the United States. The defendant here cannot demonstrate Strickland prejudice. The district court here found that it would not have remedied any of the alleged speedy trial act violations by dismissing any of the challenged counts with prejudice. That finding forecloses the defendant here from demonstrating Strickland prejudice, and this court's analysis should begin and end on that point. Well, it looks like then there is no way to enforce this statute. It looks like you're withdrawing any real method after the fact of enforcing the speedy trial act. That's not true, Judge Mayer. It's not true for two reasons. First, I think the key word in your question there is after the fact. It would be enforced if raised contemporaneously. Now, when raised 10, 12 years later, it becomes more difficult because it has to coincide. The only way it could be raised then is to overcome, you know, provide cause and prejudice, why it wasn't raised at the time. There's a default problem there, but they've overcome that in a sense of ineffective assistance of counsel, which is normally a way of overcoming default. But what I'm saying is in that context, here we are years, 11, 12 years after the fact, if that is not a way you can raise it after the fact, there is no way to raise it, right? Because you've defaulted it, and you've got no way to show, ever show, prejudice. That's not true, Judge Mayer. To get to the first part of your question, that cause and prejudice analysis would dovetail with the ineffective assistance analysis, and that ineffective assistance analysis could be met by a defendant who showed not only that his counsel performed efficiently in failing to move for dismissal, but also showed that the indictment would have been dismissed with prejudice. So if he had been able to show here, contrary to what Judge Lawson found, that the indictment would have been dismissed with prejudice, he would have prevailed, even now, 10 years later. That's why this case really turns, rises and falls on whether or not Judge Lawson abused his discretion or clearly erred in finding that he would not have dismissed this indictment with prejudice at the time had defense counsel made this motion. And it's not just me saying this, Judge Mayer. It's every court of appeals, including this one, to decide this type of claim in a 2255 context. We've cited a couple of those cases in our brief. McAuliffe, which is unpublished, held that this was the exact type of analysis that applied here. Campbell, which is published, required the defendant to not only show deficient performance in failing to move for a dismissal under the Speedy Act Trial Act violation, but required the defendant to show that the indictment would have been dismissed with prejudice. Campbell is a published decision of this circuit that has held exactly that. So as long as the trial judge says I would not have dismissed the indictment with prejudice, even though it may be 20 years later, there is no remedy. That is correct. So the Speedy Trial Act is going to be violated without a remedy after the fact. That's correct, Judge Mayer. And, I mean, that happens somewhat regularly with ineffective assistance claims where you look back in retrospect and you see an error. The defendant still has to show prejudice. I mean, one of the reasons that burden is so high is . . . It's not the indictment of the mother after the fact. This man's mother . . . I mean, most people would say if you cause that to happen, that's prejudice. They indict your mother. What's wrong with saying that's prejudice? Well, there are a couple of reasons, a couple of responses to that. One, Judge Mayer, the mother's indictment was not tied in any way to his indictment. She was indicted in the same case but on entirely different counts. And, two, this isn't . . . After the Speedy Trial Act had run and they couldn't go forward with a . . . they could not go forward with a superseding indictment under the Speedy Trial Act, and they did, and they indicted his mother, and you're saying that is not prejudice? It's not prejudice, Judge Mayer. And, again, there's two reasons here. One is that let's say they had moved for dismissal early in the case, and those first couple indictments had been dismissed without prejudice. The government would have then re-indicted, and then later, after the DNA results, that's the second argument in response to your question, after those DNA results came back, could have indicted the mother on those separate counts. If, Your Honors, look at the record, and I apologize . . . You mean indicted her separately but not in this case? Indicted her separately or in this case. I mean, keep in mind . . . How can they indict her in this case if the Speedy Trial Act time is run? Because the indictment would have been dismissed without prejudice, and the government could have re-indicted the case, and that's the whole essence of dismissal without prejudice is the government can re-indict, and so if the government re-indicts, then it can add the mother later when the DNA results come back, and that's actually the key point in answer to their question. They want to make it seem like there's some insidious motive for the government delaying indicting the mother. The government delayed indicting the mother because the DNA results on some of the items seized from the house didn't come back until a year later. This was 2003. Technology has evolved quite a bit since then. DNA results took a while. That's why the mother was delayed until later. Nothing about that would have prejudiced this defendant. How many superseding indictments were there in this case? There were eight, Your Honor. Two and a half years later, they were in trial. There were. I will say, and Judge Lawson found this in his order here as well, the reason this happened in the way it did was because the government arrested this defendant on the date, virtually the same day it indicted him, when he came to the bus stop and picked up the bags. It was a reactive case. It hadn't been in the works for more than a day, and so after they did that, they had to go interview co-conspirators and cooperators in California. There were two of them in California. Had to get the other cooperating witnesses on board. Had to test all the drugs. Had to test all the guns. Had to test all the DNA. Had to get the phone records, the Western Union records, all the corroborating evidence that was presented at trial. If you look at the way the government's case evolved, and admittedly, eight superseding indictments is a lot. It's a lot. It evolved because of the way the government's investigation progressed. They added defendants. We added conspiracy counts as additional witnesses agreed to cooperate. So even though the trial judge looked at, and as appropriately should have looked at, you know, the things that told the clock, pending motions, requests by the defense, really the government drove most of that by its actions with the series of superseding indictments because the superseding indictment comes in. There are new claims. There are new parties. That puts the defense in the position in some instances. And I'm not saying all of those were attributed to the government's actions, but it does kind of put the government in the position, basically, of driving this whole process and really necessitating a lot of the delay that did not really count against or did not tell the clock. Correct? I would agree in part, Your Honor. I mean, I think eight superseding indictments and additional counts is always going to require more trial preparation. There's no denying that. I will say that there was also extensive pretrial motions from multiple defendants. This is a defendant who changed his attorneys, I want to say, four, maybe five times, filed grievances against two of them. That also extended the time quite a bit. I mean, if we look at the time period when the violations occurred here, that was in 2003, assuming there were violations. That does toll the clock. I'm sorry, what does, Your Honor? His own activity of asking for more time to get a new lawyer. The Speedy Trial Act doesn't run against that. I'm not sure that's – I don't think – I don't know if that fits within an automatic exclusion. The defendant asking for the time, it tolls the clock. If the judge makes the ends of justice findings, it tolls the clock. And usually the judge would. And that gets to another point for why the district court here did not – would not have dismissed the case with prejudice. The district court found, at worst, a one-day and a 15-day violation of the Speedy Trial Act. A one-day and a 15-day violation. And those occurred at the same time the defendant was firing and then filing a grievance against his retained counsel, John Beauville, in 2003. So let's say defense counsel had done what defense counsel now says he should have done. Let's say he said at the time, let's have trial right now. Let's have trial right now in 2003. His attorney could not have gone forward. They were – there was an irreconcilable dispute, and he was in the process of firing him. So the district judge not only wouldn't have scheduled trial at that time, but couldn't have scheduled trial at that time. What about the fact that – I don't see how, after the fact, where the district judge doesn't know how the Speedy Trial Act works, how the government counsel apparently and the defense counsel don't know how it works, and think that it's going to be reset every time you have a new indictment. I don't see how you can ever, under the way you're handling it, have any prejudice because the judge is naturally going to say, well, I didn't know myself that this was – could be done that way, and is going to tend to exonerate himself as well as everybody else in the case by saying that there is no prejudice. You follow what I'm saying? The instinct of judges is just like the instinct of other human beings. It's to – if you don't know about it, the lawyers don't know about it, and so on, you're going to tend to say, well, there's no fault here, and I'm going to say no prejudice. But if that is the course of human nature, then you've always got no remedy after the fact. Follow me? I understand your concern, Judge Maron. I do follow you. What I'll say to that is when you have a judge here who is making this determination after the fact, whether or not he would dismiss with or without prejudice, either of those findings, neither of those findings requires any additional work afterwards for the judge. If the judge here had said, I would have dismissed counts one through three with prejudice, all he has to do is vacate those counts. It doesn't require anything else for him. If he says, I would dismiss them without prejudice, or I would have dismissed them without prejudice, which is what he did here, still the same thing. It requires very little additional effort. Now, your point, I think, Judge Merritt, was that the judge is going to be reluctant to admit he made a mistake. The judge here did admit he made a mistake. That goes more towards deficient performance. No, but admit that it was prejudicial as well. Well, that's why this Court reviews whether or not the district judge would have dismissed it with or without prejudice, and whether or not to credit the district court's reasoning. And here, the district court somewhat extensively explained his reasoning and described why he would have dismissed the case without prejudice. There were serious charges, as we go through the list in 30 seconds. I got a lot of time. Some of it had to do with the count of the drug quantity. Some of it had to do with enhancements, having to do with leadership. It just seems to me that there's no way to know what would have been, and you've got 35 years for this drug crime here, there's no way to know exactly what would have occurred if the law had been complied with. Right? I'm not sure that's true, Your Honor, and I don't agree with that. We know what would have happened. The government would not have given up in a case of this magnitude, where it filed eight superseding indictments and given up if the judge had dismissed without prejudice. To your point about sentencing Judge Merritt, this was a 35-year sentence, and it is a very significant sentence. One of the things that drove this sentence was the defendant's criminal history. He was convicted of second-degree murder, and while on parole for that, which he had originally been given a life sentence, he committed fraud. That increased his criminal history to Category 5. As far as the enhancements at sentencing, defense counsel here is only partially correct about that obstruction enhancement. It wasn't just because of his testimony at trial, and I'll direct you to pages 2214 to 2215 of the record. It was because this defendant called up one of the witnesses in this case while he was in jail and told her to testify evasively. The district court found that that also supported the obstruction enhancement. So there was a reason for this stiff sentence for this defendant, Judge Merritt. The other thing I would add in response to your question on sentencing, their best remedy here is vacating Counts 1 through 3. They haven't argued that the Speedy Trial Act ran as to any other counts. So their best remedy is to vacate Counts 1 through 3. And Count 13 is the drug conspiracy count. He got 30 years on Count 13. The guideline range for Count 13 would remain the same today. So even under his best case scenario here, Judge Merritt, he would get five years off his sentence. But what about why was he not harmed by the intervening deaths of his grandfather who would have talked about the cash found and about this Marvell wooden about the gun? Can I? My red light's about to go off, Judge Gilman. It may take more than 30 seconds. He confessed to the crime of importing cocaine from California. The district court here found twice over that neither of those witnesses would have made a difference. This court found on direct appeal, albeit under a slightly different but largely the same standard under the Sixth Amendment, that the death of his grandfather did not prejudice him. All three of his co-conspirators testified consistently. I see my light is on. May I finish? You may finish your answer. Answering the question. I'd also note that there was a witness who testified at trial that the defendant admitted to him that this supposed used car business was just a front to launder drug proceeds. That's at page 1619 through 1620. The guns, even if they were loaned to him, even if that witness had come in, had waived his Fifth Amendment rights and said, yes, I gave this stolen gun to a drug dealer in exchange for money I owed him. The odds of that happening are slim, but let's say he did. The gun was found loaded next to drug scales and a thousand pills. It simply would not have made a difference. Thank you. Your Honor, I'd like to run through a few points quickly, if I can. So, first of all, as the Supreme Court said in Barker, when witnesses die, the prejudice is obvious. Of course, we are looking into fact-specific reasons as well. I'd like to make that point. Second, the district court in this case did say, looking back, what it would have done would have been to dismiss without prejudice. However, if you take a look at the record, look at page 1178 to 79, during the motion to dismiss hearing in 2005, the court, in passing, essentially indicates he's unsure what would happen and says it would, quote, probably be helpful if counsel submitted a briefing on this. They did not, because this actual motion to dismiss the indictments did not get very far. But the district court indicated at the time he was unsure. And actually, further down the transcript, the court also indicated some amount of impatience with a number of superseding indictments and asked, are you finished with the indictments? We're not looking at another one, are we? And I would say also, even then, because this is 2255, the district court's remark about what it would have done hypothetically is only subject to de novo review, and that's for good reason. Making that statement by the district court essentially unreviewable would go against what the Supreme Court said in Taylor, which is to make a dismissal without prejudice not a toothless remedy. It would essentially defang it. Also, I do want to make clear there is a separate claim for ineffective assistance of appellate counsel, and the Supreme Court said in Smith v. Robbins the relevant proceeding for that purpose is the appeal before the court of appeals. So if Sylvester had prevailed on his appeal, that is enough to show prejudice under Strickland. There was a mention of the United States v. Campbell, which is a published decision. Judge Gilman, you actually wrote that opinion. Campbell, there are nine different claims, and there is an R&R from the magistrate judge, and the court essentially gives a block quote and says we see no reason to fault the magistrate judge's analysis, and by the way, no witnesses died, and there's no claim of that. I would also add that the government is really, as was discussed during the previous conversation, the government is the one that really drove the process of many serial superseding indictments here, and it essentially doubled down on this theory as it has this entire time that a superseding indictment can essentially restart the clock, and Mr. Jacobs, the trial attorney for Mr. Sylvester, was retained and made an appearance in November of 2003. That is nearly two years before this trial took place. Now, there is a 26-month period where his appellate counsel could have made this motion to dismiss but failed to do so. Now, one day or two-day, 15-day violation here, it essentially doesn't matter how long the delay is. The Supreme Court said in Zedner, the shall-be-dismissed requirement and the shall-be-brought-to-trial-in-70-days requirement is unequivocal. It is a binary requirement. We're not in constitutional Barker v. Wingo territory. We're in Speedy Trial Act territory, and the whole point of the Speedy Trial Act, as the Supreme Court said in McDonald, is to give specific effect to the Speedy Trial right in concrete ways with the 70-day limit. Let me just ask this question. Sure. Brother Counsel is saying that, look, Your Honors, this guy is a bad guy. Murder, all kind of things, destruction of justice, and therefore, reasonably, a judge is not going to say that there is no prejudice and dismiss the case. He makes that point in several different ways. What do you say to that overall argument? I would say, Your Honor, that we don't convict defendants on sort of broad-brush theories of is he generally guilty or not. As the briefs here make clear, you really need to look at these specific counts. Look at count three in Mr. Wooden. Look at the counts with intent to distribute in Sylvester's grandfather. We have to look at specific counts here. And actually, that brings to mind one other thing the government did say about count 13. If you look at page 974 in the record, the 30 years was on counts one and 13 together. It was not separately. The sentencing there says it is on counts one and three together. All right. The matter is now submitted. Mr. Shucker, we see that you are appointed under the CJA rules, and we want to thank you for your representation. It serves the administration of justice, and we're grateful for your service. Thank you. All of you fellows have done a really good job in this case, I must say. I haven't seen many briefs as good of quality. Thank you. There is one other matter, I believe, on the calendar, but it is on the briefs, and so the clerk may adjourn court.